UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUMMER HILL NURSING HOME LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES E. JOHNSON,[1] Acting Secretary, U.S. Department of Health and Human Services, *et al.*, <br><br> Defendants. | Civil Action No. 08-268 (RMC) |

**MEMORANDUM OPINION**

This matter is before the Court on cross motions for summary judgment. Summer Hill Nursing Home LLC seeks judicial review of a decision of the Secretary of the Department of Health and Human Services denying its claim for Medicare reimbursement of "bad debts" it incurred. The Secretary denied Summer Hill's claim because he found that Summer Hill did not bill the New Jersey Medicaid program as is required by the agency's "must bill" policy. However, it is undisputed that after Summer Hill submitted its reimbursement claim but before the Secretary issued his decision, Summer Hill billed New Jersey Medicaid and received "remittance advices" from New Jersey Medicaid refusing to pay the debts. Because the Secretary ignored this fact in his analysis and failed to explain why Summer Hill's subsequent submission of remittance advices was insufficient

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Charles E. Johnson is substituted as Acting Secretary for his predecessor, Michael O. Leavitt, Secretary of the U.S. Department of Health and Human Services.

to establish that the debts were actually uncollectible when claimed, the Court finds that the Secretary's decision was arbitrary and capricious. Accordingly, Summer Hill's motion for summary judgment will be granted and the Secretary's denied.

## I. FACTS

Summer Hill is a 120-bed nursing facility located in the State of New Jersey. It is a participating provider in both the federal Medicare program and New Jersey's Medicaid program.[2] On or about May 31, 2005, Summer Hill submitted its Medicare Cost Report for the fiscal year ending December 31, 2004 to the fiscal intermediary, claiming $170,537 in "bad debts"[3] relating to uncollectible deductible and co-insurance amounts for "dual eligible"[4] patients. On or about January 21, 2006, the intermediary disallowed $135,106 of Summer Hill's bad debt because Summer Hill "wrote off dual eligible bad debts prior to billing [New Jersey] Medicaid for the deductible and co-insurance amounts." AR 88. Summer Hill appealed the intermediary's disallowance to the Provider Reimbursement Review Board ("PRRB") on or about March 28, 2006.

Some time between receiving notice of the intermediary's disallowance and filing its appeal with the PRRB, Summer Hill billed New Jersey Medicaid for the bad debts and received remittance advices refusing to pay the debts. AR 100-141. On appeal before the PRRB, Summer Hill argued, *inter alia*, that the remittance advices show that it had complied with the agency's "must

---

[2] Medicare is a federally funded program that finances medical care for the aged and disabled. *See* 42 U.S.C. § 1395, *et seq.* Medicaid is a cooperative federal-state program that finances medical care for the poor. *See* 42 U.S.C. § 1396, *et seq.*

[3] "Bad debts are amounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services." 42 C.F.R. § 413.89(b)(1).

[4] "Dual eligibles" are persons who qualify for both Medicare and Medicaid.

bill" policy[5] because they show that "for each of the 'bad debts' claimed . . . Medicaid has issued a Code 670, reflecting its determination that, because the Medicare payment exceeds the Medicaid allowable payment ceiling, no Medicaid payment is due." AR 84. The PRRB reversed the intermediary's disallowance, but did not decide the effect of Summer Hill's subsequent receipt of remittance advices because it found that the must bill policy "has no foundation in law in that it is beyond the requirements of the regulations and [Provider Reimbursement Manual]."[6] AR 77.

The Secretary reversed the PRRB's decision on December 20, 2007. Summer Hill had argued that the Secretary "need not reach the issues of whether the PRRB was correct in finding insufficient authority for a 'must bill' policy for full Medicaid patients or whether such a policy, if properly authorized, is appropriate" because "remittance advices were received by Summer Hill from New Jersey Medicaid which conclusively establishes the debts to be 'actually uncollectible when claimed.'" AR 16. However, the Secretary ignored that argument, finding that "[t]he bad debts claimed by the Provider were not worthless when written off" because "[t]he Provider did not bill the State and receive a remittance advice to meet the reasonable collection effort requirements of the regulation and manual provisions for the claims at issue in this case." AR 12.

As a result, Summer Hill brought this suit against the Secretary and the Administrator for the Centers for Medicare & Medicaid Services. Summer Hill asserts that the Secretary's denial of its claim for Medicare reimbursement was arbitrary and capricious under the Administrative

---

[5] The "must bill" policy is an administrative requirement that providers submit evidence that they have billed state Medicaid programs for uncollectible deductible and co-insurance obligations and received a refusal to pay, called a "remittance advice," in order to be reimbursed by Medicare.

[6] The Ninth Circuit has upheld the Secretary's must bill policy. *See Cmty. Hosp. of the Monterey Peninsula v. Thompson*, 323 F.3d 782 (9th Cir. 2003). So has Judge Kollar-Kotelly on this Court. *See GCI Health Care Ctrs., Inc., v. Thompson*, 209 F. Supp. 2d 63 (D.D.C. 2002).

Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, which applies pursuant to 42 U.S.C. § 1395oo(f)(1).

## II.  LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  The APA requires a reviewing court to set aside an agency action that is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). "At a minimum, that standard requires the agency to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tourus Records*, 259 F.3d at 736 (quotation marks and citations omitted); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). An agency action is arbitrary or capricious if the agency has "entirely failed to consider an important aspect of the problem," or if it has "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

In reviewing an administrative action such as the Secretary's decision at issue here, the role of the district court is to "sit as an appellate tribunal" and review the case as a matter of law. *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Such review is limited to the administrative record, and "not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *accord Alliance for Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166, 177 (D.D.C. 2000).

### III.  ANALYSIS

The parties spend the bulk of their briefs arguing over the validity of the Secretary's must bill policy.  However, the Court need not – and does not – reach that issue because the Secretary failed to explain how that policy was violated in this case.  In his decision, the Secretary recounted that "the Provider asserted that the required remittance advices were received from [New Jersey] Medicaid which conclusively establishes the debts to be 'actually uncollectible when claimed' and therefore acknowledges the validity of the bad debts that were claimed."  AR 5.  In other words, the Secretary acknowledged Summer Hill's argument that upon receipt of remittance advices from New Jersey Medicaid refusing to pay the debts, it was in compliance with the spirit, if not the letter, of the must bill policy.  Yet the Secretary ignored this argument in his analysis.  *See* AR 5-12.  That alone requires that the Court reverse the Secretary's decision as arbitrary and capricious.  *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1051 (D.C. Cir. 2002).

Contrary to the evidence, the Secretary found that "the Provider did not bill the State for the claims at issue in this case," and based on that finding concluded that "it has not demonstrated that it has meet [*sic*] the necessary criteria for Medicare payment of bad debts related to these claims."  AR 10.  The Secretary reasoned that "it is unacceptable for a provider to write-off a Medicare bad debt as worthless without first billing the State" and that "the provider must bill the State and receive a remittance advice before claiming a bad debt as worthless because . . . the State has the most current and accurate information to make a determination."  AR 11-12.  Absent is any explanation why Summer Hill's subsequent receipt of remittance advices was insufficient to establish that the debts were actually uncollectible when claimed.  In that significant respect, the Secretary "entirely failed to consider an important aspect of the problem."  *State Farm*, 463 U.S. at

43. Accordingly, the Secretary's decision "provides no basis upon which [the Court] could conclude that it was the product of reasoned decisionmaking." *Tourus Records*, 259 F.3d at 737.

The Secretary's lawyers argue that Summer Hill's subsequent receipt of remittance advices was insufficient because Joint Signature Memorandum 370 ("JSM-370") states that "the provider must make certain that no source other than the patient would be legally responsible for the patient's medical bill . . . prior to claiming the bad debt from Medicare." AR 207 (quotation marks omitted). Nowhere in the Secretary's decision is that rationale articulated, and the Court cannot accept the lawyers' *post hoc* rationalization as a substitute for the lack of explanation. "In order for the court to uphold an agency's action or conclusion as not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), the court must be able to conclude that *the agency* examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1276 (D.C. Cir. 2005) (quotation marks and citations omitted) (emphasis added). "Appellate counsel's post hoc rationalizations are not a substitute, for an agency's discretionary order will be upheld, if at all, on the same basis articulated in the order by the agency itself." *Id.* (quotation marks and citations omitted). Nor does JSM-370 provide a rationale for why remittance advices received after a claim is filed but prior to the Secretary's decision must be disregarded inasmuch as the remittance advices establish that the debts were actually uncollectible when claimed.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Secretary's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" within the meaning

of 5 U.S.C. § 706(2)(A). Accordingly, the Court will grant Summer Hill's motion for summary judgment [Dkt. # 9] and deny the Secretary's cross motion for summary judgment [Dkt. # 10]. A memorializing Order accompanies this Memorandum Opinion.

Date: March 25, 2009                              /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge