UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUMMER HILL NURSING HOME LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-268 (RMC) |
| KATHLEEN SEBELIUS,[1] Secretary, U.S. Department of Health and Human Services, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

On March 25, 2009, the Court granted Summer Hill Nursing Home LLC summary judgment, finding the decision of the Secretary of the Department of Health and Human Services denying Summer Hill's claim for Medicare reimbursement of "bad debts" to have been arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because the Secretary failed to explain why Summer Hill's belated submission of "remittance advices" from New Jersey Medicaid refusing to pay the debts was insufficient to establish that the debts were actually uncollectible when claimed.[2] Summer Hill now moves for costs and attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* Pl.'s Mot. for Fees & Expenses ("Pl.'s

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kathleen Sebelius is substituted as Secretary of the U.S. Department of Health and Human Services for her predecessor, Michael O. Leavitt.

[2] Although the Secretary initially appealed this Court's decision, she subsequently moved to dismiss the appeal and the D.C. Circuit granted the motion. *See* September 3, 2009 Order of the Court of Appeals [Dkt. # 23].

Mot.") [Dkt. # 24]. For the reasons explained herein, the motion will be granted in part and denied in part.

## I. FACTS

Summer Hill is a 120-bed nursing facility located in the State of New Jersey. It is a participating provider in both the federal Medicare program and New Jersey's Medicaid program.[3] On or about May 31, 2005, Summer Hill submitted its Medicare Cost Report for the fiscal year ending December 31, 2004 to the fiscal intermediary, claiming $170,537 in "bad debts"[4] relating to uncollectible deductible and co-insurance amounts for "dual eligible"[5] patients. On or about January 21, 2006, the intermediary disallowed $135,106 of Summer Hill's bad debt because Summer Hill "wrote off dual eligible bad debts prior to billing [New Jersey] Medicaid for the deductible and co-insurance amounts." AR 88. Summer Hill appealed the intermediary's disallowance to the Provider Reimbursement Review Board ("PRRB") on or about March 28, 2006.

Some time between receiving notice of the intermediary's disallowance and filing its appeal with the PRRB, Summer Hill billed New Jersey Medicaid for the bad debts and received remittance advices refusing to pay the debts. AR 100-141. On appeal before the PRRB, Summer Hill argued, *inter alia*, that the remittance advices show that it had complied with the agency's "must

---

[3] Medicare is a federally funded program that finances medical care for the aged and disabled. *See* 42 U.S.C. § 1395, *et seq.* Medicaid is a cooperative federal-state program that finances medical care for the poor. *See* 42 U.S.C. § 1396, *et seq.*

[4] "Bad debts are amounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services." 42 C.F.R. § 413.89(b)(1).

[5] "Dual eligibles" are persons who qualify for both Medicare and Medicaid.

bill" policy[6] because they show that "for each of the 'bad debts' claimed . . . Medicaid has issued a Code 670, reflecting its determination that, because the Medicare payment exceeds the Medicaid allowable payment ceiling, no Medicaid payment is due."  AR 84.  The PRRB reversed the intermediary's disallowance, but did not decide the effect of Summer Hill's subsequent receipt of remittance advices because it found that the must bill policy "has no foundation in law in that it is beyond the requirements of the regulations and [Provider Reimbursement Manual]."[7]  AR 77.

The Secretary reversed the PRRB's decision on December 20, 2007.  Summer Hill had argued that the Secretary "need not reach the issues of whether the PRRB was correct in finding insufficient authority for a 'must bill' policy for full Medicaid patients or whether such a policy, if properly authorized, is appropriate" because "remittance advices were received by Summer Hill from New Jersey Medicaid which conclusively establishes the debts to be 'actually uncollectible when claimed.'"  AR 16.  However, the Secretary ignored that argument, finding that "[t]he bad debts claimed by the Provider were not worthless when written off" because "[t]he Provider did not bill the State and receive a remittance advice to meet the reasonable collection effort requirements of the regulation and manual provisions for the claims at issue in this case."  AR 12.

As a result, Summer Hill brought this suit against the Secretary and the Administrator for the Centers for Medicare & Medicaid Services, alleging that the Secretary's denial of its claim for Medicare reimbursement was arbitrary and capricious under the APA, which applies pursuant

---

[6] The "must bill" policy is an administrative requirement that providers submit evidence that they have billed state Medicaid programs for uncollectible deductible and co-insurance obligations and received a refusal to pay, called a "remittance advice," in order to be reimbursed by Medicare.

[7] The Ninth Circuit has upheld the Secretary's must bill policy.  *See Cmty. Hosp. of the Monterey Peninsula v. Thompson*, 323 F.3d 782 (9th Cir. 2003).  So has Judge Kollar-Kotelly on this Court.  *See GCI Health Care Ctrs., Inc., v. Thompson*, 209 F. Supp. 2d 63 (D.D.C. 2002).

to 42 U.S.C. § 1395oo(f)(1).  In a Memorandum Opinion, the Court held that the Secretary's denial of Summer Hill's claim for Medicare reimbursement was arbitrary and capricious because the Secretary failed to explain how the must bill policy was violated in this case.  *See Summer Hill Nursing Home LLC v. Johnson*, 603 F. Supp. 2d 35, 38 (D.D.C. 2009).  The Court reasoned that "[a]bsent is any explanation why Summer Hill's subsequent receipt of remittance advices was insufficient to establish that the debts were actually uncollectible when claimed." *Id.* at 39.  Because the Secretary did not explain how the must bill policy was violated in light of Summer Hill's subsequent receipt of remittance advices, the Court found that the Secretary's decision provided no basis upon which the Court could conclude that the decision was the product of reasoned decision-making.  *See id.* (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001)).

## II. LEGAL STANDARDS

### A.     Costs

Costs are governed by Subsection 2412(a)(1) of EAJA.  It provides:

> a judgment for costs, as enumerated in Section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity . . . .  A judgment for costs when taxed against the United States shall . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1).  Costs allowable under 28 U.S.C. § 1920 may be recovered against the United States under Subsection 2412(a)(1) to the extent that the costs relate to a litigant's obtaining "the functional equivalent of a final judgment against the government that entitles him to some relief."  *In re Turner*, 14 F.3d 637, 641 (D.C. Cir. 1994).

### B.     Attorneys' Fees

1.     *Mandatory Fees*

Mandatory fees are governed by Subsection 2412(d)(1)(A) of EAJA. It provides:

> a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). "Substantially justified" means "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person. That is no different from . . . [having] a reasonable basis both in law and in fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quotation marks and citations omitted); *see also F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996) (same). Only fees attributable to civil actions brought by or against the United States — defined to include "any agency and any official of the United States acting in his or her official capacity" — may be awarded under Subsection 2412(d)(1)(A). *Id.* § 2412(d)(2)(C). In addition, the fees are capped at $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* § 2412(d)(2)(A).

2.     *Discretionary Fees*

Discretionary fees are governed by Subsection 2412(b) of EAJA. It provides:

> a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity . . . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law . . . .

28 U.S.C. § 2412(b). Unlike mandatory fees under Subsection 2412(d)(1)(A), there is no statutory cap for discretionary fees under Subsection 2412(b). *See Gray Panthers Project Fund v. Thompson*, 304 F. Supp. 2d 36, 38 (D.D.C. 2004). However, fees are available under Subsection 2412(b) only if the Court finds that the United States acted in bad faith. *See Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991).

### III.  ANALYSIS

As a preliminary matter, the Court notes that the Secretary does not dispute that Summer Hill qualifies as a "prevailing party" within the meaning of EAJA. Because this Court granted Summer Hill summary judgment, *see Summer Hill Nursing Home*, 603 F. Supp. 2d 35, Summer Hill meets EAJA's definition of "prevailing party." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (party who wins judgment on the merits is a "prevailing party" for fee-shifting purposes); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 945 (D.C. Cir. 2005) ("it is now clear that *Buckhannon's* construction of 'prevailing party' also applies to fee claims arising under EAJA").

#### A.  Costs

Summer Hill asserts that it incurred $776.51 in costs in connection with this litigation. *See* Pl.'s Mot., Ex. F (Decl. of Brian Rath) ¶ 9; Ex. G (Itemized Disbursements). The Secretary does not contest this assertion. Accordingly, the Court will grant as uncontested Summer Hill's motion for costs in the amount of $776.51.

#### B.  Attorneys' Fees

Summer Hill argues that it is entitled to $94,434.50 in attorneys' fees because the Secretary's position was not substantially justified and because the Secretary acted in bad faith. The

Court does not agree with either argument.

"[A] finding in the merits phase that the Government's underlying action was 'arbitrary and capricious' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), does not compel an award of fees." *FEC v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986). "Under the APA, a judicial labeling of an agency's action as 'arbitrary and capricious' sets forth a legal conclusion. It is a standard against which courts measure all manner of governmental actions, some of which may represent reasonable policy choices but suffer from some defect in crafting or execution." *Id.* "[W]hether agency action invalidated as arbitrary and capricious might nevertheless have been substantially justified depends on what precisely the court meant by 'arbitrary and capricious.'" *F.J. Vollmer Co.*, 102 F.3d at 595.

"For example, an agency action accompanied by an inadequate explanation constitutes arbitrary and capricious conduct. In some circumstances, a judgment as to the adequacy of an agency's explanation is not only one on which reasonable minds can and frequently do differ, but it is also logically unrelated to whether the underlying agency action is justified under the organic statute." *FEC*, 806 F.2d at 1088 (citations omitted). Similarly, "[a] determination that an agency made a decision without considering a relevant factor leads to condemning the decision as 'arbitrary and capricious.'" *Id.* However, "agency neglect of a relevant factor in reaching its decision does not invariably doom the decision itself to the ranks of unreasonableness, as is clear from the oft-stated principle that an agency may lawfully reach the same conclusion after taking the omitted factor into account." *Id.*; *see also F.J. Vollmer Co.*, 102 F.3d at 595 ("a determination that an agency acted arbitrarily and capriciously because it failed to provide an adequate explanation or failed to consider some relevant factor in reaching a decision may not warrant a finding that the agency's action lacked

...

substantial justification") (quotation marks and citations omitted).

Such is the case here. The Court found the denial of reimbursement to have been arbitrary and capricious solely because the Secretary failed to explain how the must bill policy was violated in light of Summer Hill's belated submission of remittance advices. Notwithstanding the absence of an explanation, the Secretary was substantially justified in her position that the must bill policy was violated. Summer Hill sought reimbursement from Medicare for its debts prior to billing New Jersey Medicaid. Given that Summer Hill failed to bill New Jersey Medicaid prior to seeking reimbursement from Medicare, the Secretary's position that Summer Hill was in violation of the must bill policy was entirely reasonable. However, because the Secretary failed to explain why Summer Hill's belated submission of remittance advices was insufficient to satisfy the must bill policy, the Court could not conclude that the decision was the product of reasoned decision-making.[8]

Nor does the Court agree that the Secretary acted in bad faith. "[T]he substantive standard for a finding of bad faith is stringent and attorneys' fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 187 F.3d 655, 660 (D.C. Cir. 1999) (quotation marks and citation omitted). "Further, the finding of bad faith must be supported by clear and convincing evidence, which generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain." *Id.* (quotation marks and

---

[8] Contrary to Summer Hill's characterizations, the Court did not find that the Secretary's decision was unsupported by substantial evidence or that Summer Hill had fully complied with the must bill policy. The Court's holding was much narrower: the Secretary's decision was found to have been arbitrary and capricious because the Secretary "failed to explain why Summer Hill's subsequent submission of remittance advices was insufficient to establish that the debts were actually uncollectible when claimed . . . ." *Summer Hill Nursing Home*, 603 F. Supp. 2d at 36. Had the Secretary provided such an explanation, the result might have been different.

citations omitted). As already discussed, Summer Hill failed to bill New Jersey Medicaid prior to seeking reimbursement from Medicare. Therefore, it cannot be said that the Secretary acted in bad faith in denying Summer Hill's claim for Medicare reimbursement of bad debts for failing to comply with the must bill policy.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's Motion for Attorneys' Fees and Expenses Pursuant to 28 U.S.C. § 2412 [Dkt. # 24]. The Court will award Plaintiff $776.51 in costs, and the Court will deny Plaintiff's request for attorneys' fees.

Date: January 4, 2010                              /s/
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge